UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAY DEE FINNEY,

    Plaintiff,

v.

ARCH REALTY COMPANY LLC d/b/a
WILSON WHITE MANAGEMENT LLC, a
Michigan corporation, MADISON
PROPERTY COMPANY LLC, a Michigan
corporation, and TIM ROSS,

    Defendants.
_____/

Case No. 10-12395

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on November 10, 2011.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Jay Dee Finney ("Plaintiff") filed this suit to recover damages and obtain declaratory relief, alleging that he suffered sexual harassment and retaliation during the course of his employment. Plaintiff seeks relief under the Elliott-Larsen Civil Rights Act ("CRA"), Michigan Compiled Laws § 37.2101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Arch Realty Company LLC d/b/a Wilson White Management LLC ("Wilson White") and Madison Property Company ("Madison Property") (collectively, "Defendants") filed a motion for summary judgment on June 30,

2011 pursuant to Federal Rule of Civil Procedure 56. The matter has been fully briefed, and the Court heard oral argument on October 17, 2011. For the reasons stated below, the Court denies the motion.

## I. Factual and Procedural Background

At all times relevant to this suit, Defendants operated an apartment complex known as "The Crossings" in Canton, Michigan. Defendant Tim Ross was the property manager for the complex. In February 2007, Ross hired Plaintiff to the position of Maintenance Director. His duties included supervision of the maintenance and grounds staffs, as well as vendors and contractors involved in maintenance activities.

Plaintiff claims that shortly after he was hired, Ross began sexually harassing him. Ross allegedly touched Plaintiff countless times in a sexually suggestive manner on his arms, legs, and sides. Finney Dep. 43:8-21, May 20, 2011. Plaintiff maintains that he rejected Ross's advances. Plaintiff further alleges that Ross placed his hand on Plaintiff's thigh on multiple occasions, including on one occasion during December 2007 or January 2008 when the two were riding in Plaintiff's truck to a Home Depot store. Finney Dep. 48:2-12. Ross allegedly made suggestive comments on numerous occasions, telling Plaintiff, for example, that he was "hot," "sexy," and "looked cute in them shorts." Caniza Dep. 62:13-16, Mar. 14, 2011; Finney Dep. 44:13-14. Ross allegedly showed Plaintiff and two other male employees pornographic pictures on his office computer, asking them if they "liked that." Finney Dep. 58:20. Ross allegedly asked Plaintiff to spank him, to go swimming alone with him early in the morning, and to meet him in the clubhouse at night to "party together." Finney Dep. 50:25-51:3, 61:25-62:16. Plaintiff allegedly received

gifts from Ross that he believes were inappropriate, including underwear soaked in cologne and a set of hot sauces with names such as "Butt Burner" and "Texas Tail Torcher." Finney Dep. 54:6-19.

At some point, Plaintiff became involved in a romantic relationship with Silvana Caniza, who was at that time a tenant at the complex. Caniza soon secured a contract for cleaning vacated units at The Crossings. She and Plaintiff married in June 2008.

Plaintiff alleges that he complained directly to Ross about his conduct and told Ross that he would complain to Human Resources if it continued. Ross allegedly told Plaintiff that he had "nowhere to go" with the complaint, Finney Dep. 82:5, because Ross was "in with the managers or the owners of the company and they weren't going to believe anything [Plaintiff] said." Finney Dep. 83:19-22. When Plaintiff complained to Ross, Ross allegedly threatened to fire Plaintiff, Caniza, and Plaintiff's son, who also worked at The Crossings. Finney Dep. 189:24. Plaintiff apparently contacted Bob Lenz, who he believed was one of the owners, and explained that Ross's behavior was "crossing the line." Finney Dep. 88:2. Lenz stated that he would talk with Ross. Plaintiff also allegedly complained about Ross's behavior to Michelle Smith, the Leasing Manager at the complex.

Defendants claim that Plaintiff and Caniza confronted other employees at the complex about various matters, including allegations that an employee was speaking to Plaintiff's ex-wife about his relationship with Caniza. Ross apparently directed Plaintiff and Caniza to refrain from having such discussions with other employees unless Ross was present. On Wednesday, August 13, 2008, Ross decided to terminate Caniza's contract

with The Crossings. Plaintiff allegedly confronted him about this decision the following day and angrily stormed off. Ross Dep. 157:7-158:4, Jan. 26, 2011.

On Friday, August 15, 2008, several of Plaintiff's subordinates asked him how to make a complaint about Ross. Plaintiff responded that he would find out and they would go to Human Resources the following Monday, August 18. Finney Dep. 217:14-25. At this time, Plaintiff allegedly determined that he would report Ross's behavior to Human Resources. He allegedly sent a text message to Ross asking him for the phone number for Human Resources, but received no response. Finney Aff. ¶ 18.

On August 18, 2008, Ross called Plaintiff into his office and informed him that his employment was terminated. Ross directed Plaintiff to turn in his keys to the property, go home, and wait for a call from Human Resources. That same day, Plaintiff and Caniza went to meet with Human Resources Director Laurie Tooles and Regional Manager Brad Hayosh to describe Ross's behavior. Plaintiff and Caniza made an audio recording of their meeting with Tooles and Hayosh. Hayosh noted that Ross had recently mentioned issues relating to Plaintiff's performance and that issues in Plaintiff's personal life had begun to affect his performance at work. Hayosh, however, promised a full investigation of Plaintiff's allegations. Plaintiff asserts that no investigation was undertaken relating to his complaints.

On October 6, 2008, Plaintiff filed employment discrimination charges against Wilson White with the Michigan Department of Civil Rights and the EEOC. On June 11, 2009, he signed a "Supplemental Questionnaire for Pending Charge" and submitted it to the EEOC. This document requested that the pending charge be amended to add Madison

4

Property as a respondent. The EEOC sent Plaintiff a new charge form, which he signed and returned on July 7, 2009.

Plaintiff received notice of his right to sue on May 4, 2010, and filed this action on June 17, 2010. In his Complaint, Plaintiff asserts the following claims: quid pro quo sexual harassment and hostile environment sexual harassment in violation of the CRA (Count I); quid pro quo sexual harassment and hostile environment sexual harassment in violation of Title VII (Count II); retaliation in violation of Title VII (Count III); and retaliation in violation of the CRA (Count IV). Defendants have moved for summary judgment with respect to the sexual harassment claims.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue

for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III. Discussion

### A. Timeliness of Plaintiff's Claim

Defendants contend that Plaintiff failed to file a timely charge of discrimination with the EEOC against Madison Property, and therefore, this suit is barred. The Court does not agree. Title VII requires a plaintiff who has filed a charge of discrimination with a state or local agency to file his charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). However, as Plaintiff points out, "a charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. 1601.12(b). Plaintiff submitted his supplemental questionnaire to the EEOC on June 11, 2009, requesting to add Madison Property as a respondent to the existing charge. *See* Pl.'s Resp. Br. Ex. 18. This occurred

within 300 days of Plaintiff's termination.  Although Plaintiff signed an amended charge including Madison Property on July 7, 2009, amended charges "relate back to the date the charge was first received."  29 C.F.R. § 1601.12(b).  The Court accordingly concludes that Plaintiff's charge against Madison Property was timely filed with the EEOC.

### B. *Faragher-Ellerth* Affirmative Defense

Defendants argue that they are not liable for any harassment under Title VII because they have satisfied the criteria of the affirmative defense laid out by the Supreme Court in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275 (1998) and *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998).  In *Faragher*, the Court held:

> The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. at 807, 118 S. Ct. at 2292-93 (citations omitted).  The Supreme Court emphasized: "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment."  *Id.* at 808, 118 S. Ct. at 2293.

It is undisputed that Plaintiff's employment was terminated.  Although Defendants assert that Hayosh, rather than Ross, made the termination decision, the evidence before the Court establishes at least a genuine dispute of fact as to whether Ross's alleged harassment culminated in the decision to terminate Plaintiff's employment.  Plaintiff complained to Ross about his behavior, and claims that in response, Ross threatened to fire him, his son, and Caniza.  Finney Dep. 189:24.  Hayosh testified that Ross had the

authority to hire and fire employees, Hayosh Dep. 42:11-22, Jan. 10, 2011, and Tooles testified that Ross terminated Plaintiff. Tooles Dep. 23:25-24:1, Jan. 7, 2011. Moreover, there is evidence suggesting that even if the decision was made by Hayosh, it was based solely on information provided to him by Ross. Hayosh testified that he would "generally respect" Ross's decision to terminate an employee. Hayosh Dep. 43:15-22. Defendants may therefore be liable under the "cat's paw" theory of liability. *See Arendale v. City of Memphis*, 519 F.3d 587, 604 n.13 (6th Cir. 2008) ("When an adverse hiring decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this Court has held that the employer may be held liable under a 'rubber-stamp' or 'cat's paw' theory of liability."). The Court therefore cannot grant Defendants summary judgment on the Title VII claims based on the *Faragher-Ellerth* defense.

Turning to Plaintiff's CRA claims, the Court notes that the Michigan Supreme Court has rejected application of the *Faragher-Ellerth* affirmative defense, finding it inconsistent with the language of the CRA. *Chambers v. Trettco, Inc.*, 463 Mich. 297, 316, 614 N.W.2d 910, 918 (Mich. 2000). Defendants' affirmative defense thus fails as a matter of law with respect to these claims.

Even if the *Faragher-Ellerth* defense were available, genuine disputes of fact would preclude summary judgment. "[B]efore the employer can benefit from the defense, it must prove both that it acted reasonably in preventing and correcting harassment and that the victimized employee unreasonably failed to act by not utilizing complaint opportunities." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 349 (6th Cir. 2005). "The employer will

8

lose this defense if it fails either prong." *Id.* "Under the first prong of the defense, employers 'have an affirmative duty to prevent sexual harassment by supervisors.'" *Id.* (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 561 (6th Cir. 1999)). "While the affirmative duty on the part of the employer will often include the requirement that it have some sort of sexual harassment policy in place, the duty does not end there." *Id.* "Prong one of the affirmative defense requires an inquiry that looks behind the face of a policy to determine whether the policy was effective in practice in reasonably preventing and correcting any harassing behavior." *Id.*

> While there is no exact formula for what constitutes a "reasonable" sexual harassment policy, an effective policy should at least: (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) and provide for training regarding the policy.

*Id.* (citations omitted). It is unclear whether Defendants' sexual harassment policy provided any mechanism for bypassing a harassing supervisor. Plaintiff asserts that the policy fails to include a contact information to report incidents of sexual harassment. *See* Wilson White Employee Handbook § 3.1, Pl.'s Resp. Br. Ex. 16. Plaintiff further asserts that he sent a text message to Ross asking him for the phone number for Human Resources, but received no response. Finney Aff. ¶ 18. As these allegations call into question the policy's effectiveness, the Court cannot conclude that Defendants have established their entitlement to the *Faragher-Ellerth* affirmative defense.

### C. Sufficiency of the Conduct Alleged

Defendants argue that Plaintiff's sexual harassment claims fail because he has not

alleged conduct that is both severe *and* pervasive. This misstates the applicable test. Title VII is violated when the workplace is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe *or* pervasive' to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S. Ct. 2399, 2405 (1986)) (emphasis added). "This is not, and by its nature cannot be, a mathematically precise test." *Id.* at 22, 114 S. Ct. at 371. Perhaps no single incident described by Plaintiff was severe in nature, but Plaintiff clearly alleges that Ross engaged in frequent sexual harassment which manifested itself verbally and physically over a period of eighteen months. This conduct might be considered sufficiently pervasive so as to alter the conditions of Plaintiff's employment. The Court therefore denies Defendants' motion for summary judgment.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment is **DENIED**.

                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:

Charlotte Croson, Esq.
J. Geoffrey Lahn, Esq.
John M. Allen, Esq.