UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAY DEE FINNEY,

       Plaintiff,

                                   Case No. 10-12395

v.

                                   Honorable Patrick J. Duggan

ARCH REALTY COMPANY LLC d/b/a
WILSON WHITE MANAGEMENT LLC, a
Michigan corporation, MADISON
PROPERTY COMPANY LLC, a Michigan
corporation, and TIM ROSS,

       Defendants.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on November 10, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

Jay Dee Finney ("Plaintiff") filed this suit to recover damages and obtain declaratory relief, alleging that he suffered sexual harassment and retaliation during the course of his employment.  Plaintiff seeks relief under the Elliott-Larsen Civil Rights Act ("CRA"), Michigan Compiled Laws § 37.2101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*  Before the Court is Defendant Tim Ross's motion for summary judgment, filed on June 30, 2011 pursuant to Federal Rule of Civil Procedure

56.[1]  The matter has been fully briefed, and the Court heard oral argument on October 17,

2011.  For the reasons stated below, the Court denies the motion.

## I. Factual and Procedural Background

At all times relevant to this suit, Defendants Wilson White Management LLC

("Wilson White") and Madison Property Company LLC ("Madison Property") operated an

apartment complex in Canton, Michigan, known as "The Crossings."  Ross was the

property manager for the complex.  In February 2007, Ross hired Plaintiff to the position

of Maintenance Director.  His duties included supervision of the maintenance and grounds

staffs, as well as vendors and contractors involved in maintenance activities.

Plaintiff claims that shortly after he was hired, Ross began sexually harassing him.

Ross allegedly touched Plaintiff countless times in a sexually suggestive manner on his

arms, legs, and sides.  Finney Dep. 43:8-21, May 20, 2011.  Plaintiff maintains that he

rejected Ross's advances.  Plaintiff further alleges that Ross placed his hand on Plaintiff's

thigh on multiple occasions, including on one occasion during December 2007 or January

2008 when the two were riding in Plaintiff's truck to a Home Depot store.  Finney Dep.

48:2-12.  Ross allegedly made suggestive comments on numerous occasions, telling

Plaintiff, for example, that he was "hot," "sexy," and "looked cute in them shorts."  Caniza

Dep. 62:13-16, Mar. 14, 2011; Finney Dep. 44:13-14.  Ross allegedly showed Plaintiff and

---

[1] Although the motion also requests dismissal of Plaintiff's claims pursuant to Federal
Rule of Civil Procedure 12(b)(6), it makes extensive reference to materials outside the
pleadings, including the depositions of various individuals.  Such matters cannot be
considered when evaluating a motion under this Rule, *see* Fed. R. Civ. P. 12(d), and the
Court accordingly treats Ross's motion as one seeking only summary judgment.

two other male employees pornographic pictures on his office computer, asking them if they "liked that." Finney Dep. 58:20. Ross allegedly asked Plaintiff to spank him, to go swimming alone with him early in the morning, and to meet him in the clubhouse at night to "party together." Finney Dep. 50:25-51:3, 61:25-62:16. Plaintiff allegedly received gifts from Ross that he believes were inappropriate, including underwear soaked in cologne and a set of hot sauces with names such as "Butt Burner" and "Texas Tail Torcher." Finney Dep. 54:6-19.

At some point, Plaintiff became involved in a romantic relationship with Silvana Caniza, who was at that time a tenant at the complex. Caniza soon secured a contract for cleaning vacated units at The Crossings. She and Plaintiff married in June 2008.

Plaintiff alleges that he complained directly to Ross about his conduct and told Ross that he would complain to Human Resources if it continued. Ross allegedly told Plaintiff that he had "nowhere to go" with the complaint, Finney Dep. 82:5, because Ross was "in with the managers or the owners of the company and they weren't going to believe anything [Plaintiff] said." Finney Dep. 83:19-22. When Plaintiff complained to Ross, Ross allegedly threatened to fire Plaintiff, Caniza, and Plaintiff's son, who also worked at The Crossings. Finney Dep. 189:24. Plaintiff apparently contacted Bob Lenz, who he believed was one of the owners, and explained that Ross's behavior was "crossing the line." Finney Dep. 88:2. Lenz stated that he would talk with Ross. Plaintiff also allegedly complained about Ross's behavior to Michelle Smith, the Leasing Manager at the complex.

Defendants claim that Plaintiff and Caniza confronted other employees at the

complex about various matters, including allegations that an employee was speaking to Plaintiff's ex-wife about his relationship with Caniza. Ross apparently directed Plaintiff and Caniza to refrain from having such discussions with other employees unless Ross was present. On Wednesday, August 13, 2008, Ross decided to terminate Caniza's contract with The Crossings. Plaintiff allegedly confronted him about this decision the following day and angrily stormed off. Ross Dep. 157:7-158:4, Jan. 26, 2011.

On Friday, August 15, 2008, several of Plaintiff's subordinates asked him how to make a complaint about Ross. Plaintiff responded that he would find out and they would go to Human Resources the following Monday, August 18. Finney Dep. 217:14-25. At this time, Plaintiff allegedly determined that he would report Ross's behavior to Human Resources. He allegedly sent a text message to Ross asking him for the phone number for Human Resources, but received no response. Finney Aff. ¶ 18.

On August 18, 2008, Ross called Plaintiff into his office and informed him that his employment was terminated. Ross directed Plaintiff to turn in his keys to the property, go home, and wait for a call from Human Resources. That same day, Plaintiff and Caniza went to meet with Human Resources Director Laurie Tooles and Regional Manager Brad Hayosh to describe Ross's behavior. Plaintiff and Caniza made an audio recording of their meeting with Tooles and Hayosh. Hayosh noted that Ross had recently mentioned issues relating to Plaintiff's performance and that issues in Plaintiff's personal life had begun to affect his performance at work. Hayosh, however, promised a full investigation of Plaintiff's allegations. Plaintiff asserts that no investigation was undertaken relating to his complaints.

4

On October 6, 2008, Plaintiff filed employment discrimination charges with the Michigan Department of Civil Rights and the EEOC.  Plaintiff received notice of his right to sue on May 4, 2010, and filed this action on June 17, 2010.  In his Complaint, Plaintiff asserts the following claims: quid pro quo sexual harassment and hostile environment sexual harassment in violation of the CRA (Count I); quid pro quo sexual harassment and hostile environment sexual harassment in violation of Title VII (Count II); retaliation in violation of Title VII (Count III); and retaliation in violation of the CRA (Count IV).  Ross has moved for summary judgment with respect to the claims against him.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact."  *Id*. at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct.

1348, 1356 (1986).  To demonstrate a genuine issue, the non-movant must present

sufficient evidence upon which a jury could reasonably find for the non-movant; a

"scintilla of evidence" is insufficient.  *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable

inferences" in the non-movant's favor.  *Id.* at 255, 106 S. Ct. at 2513.  "A party asserting

that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to

particular parts of materials in the record . . . or (B) showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

### III. Discussion

**A. Individual Liability Under Title VII**

Ross asserts that he cannot be held personally liable under Title VII, as the statute

imposes liability only on employers.  Plaintiff, in response, notes that his Complaint does

not assert Title VII claims against Ross, but only against Wilson White and Madison

Property.  *See* Pl.'s Resp. ¶ 4.  The Court will not address this argument in further detail,

as it does not pertain to a claim raised in the Complaint.

**B. Plaintiff's CRA Retaliation Claim**

Ross argues that Plaintiff has failed to present evidence that would give rise to

liability for retaliation under the CRA.  The CRA prohibits retaliation against a person

"because the person has opposed a violation of this act, or because the person has made a

charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding

or hearing under this act."  Michigan Compiled Laws § 37.2701(a).  Ross points out that

6

Plaintiff failed to file a formal complaint prior to his termination, but a plaintiff need not file a formal complaint to invoke the statute's protections.  "Regardless of the vagueness of the charge or the lack of formal invocation of the protection of the act, if an employer's decision to terminate or otherwise adversely effect [sic] an employee is a result of that employee raising the spectre of a discrimination complaint, retaliation prohibited by the act occurs."  *McLemore v. Detroit Receiving Hosp. & Univ. Med. Ctr.*, 196 Mich. App. 391, 396, 493 N.W.2d 441, 443 (Mich. Ct. App. 1992).  Plaintiff has presented evidence from which a jury could reasonably conclude that he opposed sexual harassment.  He has testified that he complained to Ross about inappropriate remarks and unwelcome touching. He claims to have told Ross that he would complain to Human Resources if this behavior continued.  Plaintiff alleges that he sent a text message to Ross on August 15, 2008, asking for the phone number for Human Resources.  Finney Aff. ¶ 18.  If believed, this evidence demonstrates Plaintiff's opposition to Ross's conduct and raises the possibility of a discrimination complaint.

Plaintiff has also presented sufficient evidence to conclude that his opposition to Ross's conduct caused his termination.  "To establish causation, the plaintiff must show that his participation in activity protected by the CRA was a significant factor in the employer's adverse employment action, not just that there was a causal link between the two."  *Barrett v. Kirtland Cmty. College*, 245 Mich. App. 306, 315, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001).  "A causal connection can be established through circumstantial evidence, such as close temporal proximity between the protected activity and adverse actions, as long as the evidence would enable a reasonable fact-finder to infer that an

action had a discriminatory or retaliatory basis." *Rymal v. Baergen*, 262 Mich. App. 274, 303, 686 N.W.2d 241, 257 (Mich. Ct. App. 2004). Here, Plaintiff claims to have warned Ross about the possibility of a complaint, and his termination occurred only three days after allegedly asking for the Human Resources phone number. These facts are sufficient to allow a reasonable inference of retaliatory motive. The Court therefore concludes that Plaintiff has established a genuine dispute of material fact with respect to his retaliation claim, and summary judgment must be denied.

## C. Plaintiff's Discrimination Claim

Ross argues that Plaintiff could not have found the alleged conduct unwelcome. He presents the testimony of Plaintiff's coworkers, who stated that Plaintiff bragged about his sexual exploits and asked another employee to engage in a three-way sexual encounter. The trier of fact determines the existence of sexual harassment in light of the record as a whole and the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 69, 106 S. Ct. 2399, 2406 (1986). The Court believes that the evidence presented by Plaintiff is sufficient to infer that Ross's conduct created a hostile work environment. For purposes of this motion, the Court must accept Plaintiff's evidence as true and draw all reasonable inferences in his favor. Plaintiff has testified that Ross frequently touched him in a suggestive manner and made a variety of sexual comments and requests. Ross may dispute the impact of this conduct, but the Court believes that the evidence with respect to Plaintiff's claim is not "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S. Ct. at 2512. A jury could conclude that Ross's

8

conduct was sufficient to constitute sexual harassment, and therefore, the Court cannot grant summary judgment on the discrimination claim.

### D. Applicability of the Michigan Supreme Court's *Hamed* Decision

On July 29, 2011, the Michigan Supreme Court issued its decision in *Hamed v. Wayne County*, 490 Mich. 1, 803 N.W.2d 237 (Mich. 2011), addressing an employer's liability for sexual harassment under the CRA. The parties stipulated to amend the scheduling order in this case to allow supplemental briefing on the matter. Ross argues that *Hamed* precludes his liability in this case, but the Court concludes that he is mistaken.

In *Hamed*, the female plaintiff was arrested and transferred to the Wayne County Jail. When she arrived there, a male deputy offered her better treatment in exchange for sexual favors. When the plaintiff refused, the deputy sexually assaulted her. The plaintiff sued Wayne County under the CRA, arguing that the County was vicariously liable for the deputy's sexual harassment. The circuit court dismissed the plaintiff's claim, but the Michigan Court of Appeals reversed, concluding that employers are vicariously liable for acts of quid pro quo sexual harassment committed by their employees where supervisory authority was used to perpetrate the harassment.

On appeal, the Michigan Supreme Court reversed. The Court noted that because the CRA incorporates common law agency principles, "if a defendant is not vicariously liable for the acts of its agent under traditional principles of respondeat superior, the plaintiff's claim under the CRA fails as a matter of law." *Id.* at 10, 803 N.W.2d 244. Under Michigan law, *respondeat superior* liability applies to an employee's actions taken in the course of his employment and actions taken outside of the scope of employment that were

reasonably foreseeable to the employer.  *Id.* at 11-13, 803 N.W.2d at 244-45.  In *Hamed*, the Court rejected the "aided-by-agency" exception to *respondeat superior* liability, which provides that an employer is strictly liable for its employee's actions where the employee accomplishes an act through the exercise of his supervisory power over the victim.  *Id.* at 22, 803 N.W.2d at 250-51.  Applying Michigan agency principles to the facts, the Court concluded that the sexual assault of the plaintiff was outside the scope of the deputy's duties and unforeseeable, as Wayne County lacked information suggesting the deputy's propensity to commit such an act.  *Id.* at 16, 803 N.W.2d at 247.  Because principles of Michigan agency law would not justify holding Wayne County vicariously liable for the deputy's assault, the Court concluded that the County was not liable under the CRA.

     *Hamed* has no application to the claims against Ross.  Plaintiff has not asserted that Ross is liable under *respondeat superior* principles; rather, Plaintiff claims that Ross is liable for his own actions.  As Plaintiff notes, it is undisputed that an agent of an employer may be held liable under the CRA for his own acts of harassment and retaliation.  *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 420 (Mich. 2005) ("[T]he Legislature intended to make the agent tantamount to the employer so that the agent unmistakably is also subject to suit along with the employer.").  The Michigan Supreme Court's decision in *Hamed* does not disturb this principle, and accordingly, does not preclude Ross's liability under the CRA.

## E. Ross's Agency Argument

     The CRA imposes liability on "employers," and defines an "employer" as "a person who has 1 or more employees, and includes an agent of that person."  Michigan Compiled Laws § 37.2201(a).  Ross asserts that he lacked decision-making authority regarding

Plaintiff's employment, and thus, was not an "agent" of Wilson White or Madison Property with respect to such decisions. Ross concludes that Plaintiff's claims against him fail as a matter of law because he falls outside the scope of the CRA's definition of "employer." The Court disagrees. "Under fundamental agency law, a principal is bound by an agent's actions within the agent's actual or apparent authority." *James v. Alberts*, 464 Mich. 12, 15, 626 N.W.2d 158, 160 (Mich. 2001). Plaintiff has presented evidence indicating that Ross had the actual authority to terminate Plaintiff's employment. Madison Property's Regional Manager, Brad Hayosh, testified that Ross had the authority to hire and fire employees at The Crossings, including Plaintiff. Hayosh Dep. 42:11-22, Jan. 10, 2011. Accepting this evidence as true, one could reasonably conclude that Ross acted as the agent of Madison Property when terminating Plaintiff's employment. This would subject Ross to liability under the CRA. The Court therefore concludes that it must deny Ross's motion for summary judgment.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant Tim Ross's motion for summary judgment is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Charlotte Croson, Esq.
J. Geoffrey Lahn, Esq.
John M. Allen, Esq.

11